# State of Rhode Island and Providence Plantations

SUPERIOR COURT

[x] PROVIDENCE /BRISTOL [ ] KENT [ ] WASHINGTON [ ] NEWPORT

CIVIL ACTION, FILE No. 05-2286

THE HOTEL PROVIDENCE, LLC Plaintiff

vs.

NATIONAL GRANGE MUTUAL INSURANCE COMPANY Defendant

***Summons***

*To the above-named Defendant:* National Grange Mutual Insurance Company

The above-named Plaintiff has brought an action against you in said superior court in the county indicated above. You are hereby summoned and required to serve upon Peter Lawson Kennedy, Esq. Plaintiff's attorney, whose address is Adler Pollock & Sheehan P.C., One Citizens Plaza, 8th Floor, Providence, RI 02903-1345 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

[signature] CLERK

Dated: May 9, 2005

(Seal of the Superior Court)

A true copy attest
Geo R. Clark, Constable #6025
George R. Clark, Constable
25 May, 2005

EXHIBIT A

ALL-STATE LEGAL

S-135 (REV. 4-99)

CL - 153

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

Department of Business Regulation
INSURANCE DIVISION
233 Richmond Street, Suite 233
Providence, RI 02903 - 4233
TELEPHONE NO. (401) 222-2223

FAX No. (401) 222-5475
TDD No. (401) 222-2999

May 26, 2005

National Grange Mutual Insurance Company
Mr. Richard G. Schultz
55 West Street
Keene NH 03431

Berkshire
144793

Dear Mr. Schultz:

Enclosed is a copy of a summons served upon me in the case of:

**The Hotel Providence, LLC**

**vs**

**National Grange Mutual Insurance Company**

Kindly acknowledge receipt of the above at your earliest convenience.

RETURN DATE (WITHIN 20 DAYS)

Very truly yours,

Joseph Torti III

Associate Director/Superintendent of Insurance

DMA
Enclosures

CERTIFIED MAIL

3/1/05

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

THE HOTEL PROVIDENCE , LLC :

v. : C.A. PC 05-2286

NATIONAL GRANGE MUTUAL INSURANCE COMPANY :

## COMPLAINT

1. The Hotel Providence, LLC ("Hotel Providence") a Rhode Island limited liability company was and is the Lessor of a building at 139 Mathewson Street in Providence, Rhode Island, which was renovated into a hotel (the "Project").

2. Berkshire Construction Services ("Berkshire") was the General Contractor under contract with Hotel Providence for the Project. Berkshire has been petitioned into receivership.

3. National Grange Mutual Insurance Company ("National Grange") is a Surety company, which issued a Bond for its principal, Berkshire, for its performance of the agreement between it and Hotel Providence for the renovations on the Project. A copy of the Bond is attached as Exhibit 1.

4. The penal sum of the performance bond was $7,260,800.00.

5. The Agreement between Hotel Providence and Berkshire required that Berkshire complete its work on the Project no later than August 1, 2004.

6. Berkshire commenced work on the Project in a timely fashion, but on November 17, 2004, it was petitioned into receivership and ceased work on the project, thereby defaulting on its performance. At the time of its default, it was already three (3) months behind in its schedule to complete.

5-5-05

7. Hotel Providence notified National Grange of Berkshire's default in a timely manner.

8. Three months after the default of Berkshire, National Grange arranged for the services of E.W. Burman, Inc. ("Burman") as the Takeover Contractor to complete the Project after Berkshire's default, which it was obligated to do pursuant to the Bond.

9. National Grange has paid all sums for labor, materials and equipment rental to have the Project completed by Burman, and paid for damages to the Project caused by the default of its principal, Berkshire.

10. Although National Grange has paid these sums necessary to perform the work on the Project so that it was completed in accordance with the contract documents between Hotel Providence and Berkshire, excepting the time for completion, the issue of additional damages was left open between Hotel Providence and National Grange *see* the excerpt of the Tender Agreement between Hotel Providence and National Grange, paragraph 6, attached as Exhibit 2.

11. As a result of the construction delays by Berkshire, and the tardiness of National

Grange in obtaining a Takeover Contractor, the opening of the hotel by Hotel Providence scheduled for August 1, 2004, was delayed until February 1, 2005, a delay of six (6) months.

12. Because of the late opening of the hotel, Hotel Providence sustained lost revenues and extraordinary and additional expenses in an amount in excess of $800,000.00.

WHEREFORE, Hotel Providence demands judgment against National Grange in the sum in excess of $8,000,000, plus interest, costs, and attorneys' fees pursuant to Paragraph 6.2 of the Performance Bond attached hereto as Exhibit 1.

THE HOTEL PROVIDENCE

By Its Attorneys,

PETER LAWSON KENNEDY (#0444)
TODD D. WHITE (# 5943)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607
Dated: May 5, 2005

*331004_1.doc*

Main Street America Group
National Grange Mutual Insurance Company
Old Dominion Insurance Company
Main Street America Assurance Company

**Bond Number S-144793**

# Performance Bond

*Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.*

CONTRACTOR (Name and Address):
Berkshire Construction Services
3311 South County Trail
East Greenwich, RI 02818

Surety (Name and Principal Place of Business)
National Grange Mutual Insurance Company
55 West Street
Keene, NH 03431

OWNER (Name and Address):
The Hotel Providence, LLC
292 Westminster Street
Providence, RI 02903

CONSTRUCTION CONTRACT
Date: 5/20/2003
Amount: $7,260,800.00
Description (Name and Location):
Renovation of existing building at 139 Mathewson Street into a hotel occupancy.

BOND
Date (Not earlier than Construction Contract Date): 6/13/03
Amount: $7,260,800.00
Modifications to this Bond: ☒ None ☐ See Page 3

CONTRACTOR AS PRINCIPAL
Company: (Corporate Seal)
Berkshire Construction Services
Signature: Eugene V. Bucci Sr.
Name and Title: EUGENE V. BUCCI SR.
PRESIDENT
(Any additional signatures appear on page 3)

SURETY
Company: (Corporate Seal)
National Grange Mutual Insurance Company
Signature: [signature]
Name and Title: Scott G. Paice
Attorney-In-Fact

*(FOR INFORMATION ONLY – Name, Address and Telephone)*

AGENT or BROKER:
Affiliated Insurance Managers Inc
200 Metro Center Blvd.,
Warwick, RI 02886 (401) 352-3000

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

RECEIVED
MAR 30 2005
ADLER, POLLOCK & SHEEHAN

Printed in cooperation with the American Institute of Architects (AIA) by the National Grange Mutual Insurance Company. The language in this document conforms exactly to the language used in AIA Document A312, December 1984 edition, third printing, March, 1987.

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3 If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4 When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

.2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

5 If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner. As waived to S.W.

6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligation under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

12 DEFINITIONS

12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:**

NONE

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

CONTRACTOR AS PRINCIPAL
Company: (Corporate Seal)
Berkshire Construction Services

Signature: ______________________
Name and Title:
Address:
3311 South County Trail
East Greenwich, RI 02818

SURETY
Company: (Corporate Seal)
NATIONAL GRANGE MUTUAL INSURANCE COMPANY

Signature: ______________________
Name and Title: SCOTT G PAICE, ATTORNEY IN FACT
Address:
55 West Street
Keene, NH 03431

Printed in cooperation with the American Institute of Architects (AIA) by the National Grange Mutual Insurance Company. The language in this document conforms exactly to the language used in AIA Document A312, December 1984 edition, third printing, March, 1987.

WHEREAS, the Obligee is prepared to direct the Completion Contractor to perform the work under the Completion Contract accordingly;

NOW, THEREFORE, in consideration of the agreements contained herein and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, National Grange and the Obligee do hereby agree as follows:

1. The foregoing recitals are true and correct and the same are adopted as part of this Agreement.

2. National Grange tenders E.W. Burman, Inc. as the Completion Contractor to perform and complete the Original Contract.

3. Simultaneously with the execution of this Agreement, National Grange shall pay the Obligee the total sum of $1,646,817.25, representing the Shortfall of monies between the Contract Balances and the Completion Price to be paid to the Completion Contractor.

4. a. The Payment Bond obligations as to claimants for work performed or materials supplied to the Former Contractor remain unchanged by this agreement

b. The Performance Bond obligations and obligations under the Dual Obligees Rider remain unchanged except insofar as they are affected by this Agreement.

5. The Obligee agrees to accept the Completion Contractor and to enter into a contract directly with the Completion Contractor for the completion of the work. The Obligee will prepare and execute the appropriate contract documents with the Completion Contractor in connection therewith.

6. It is expressly understood between National Grange and the Obligee that by executing this Agreement, the Obligee does not waive whatever rights it may have pursuant to the terms of the Performance Bond to make any additional claims against National Grange for losses outside the scope of this Agreement that the Obligee deems appropriate. However, the Obligees acknowledge that any amounts paid by National Grange pursuant to this tender agreement serve to reduce the penal sum of the bond accordingly.

7. It is expressly understood between National Grange and the Obligee that National Grange hereby reserves the right to raise any such defenses as may be available to either the Former Contractor or to National Grange in connection with any additional claims asserted by the Obligee over and above the amount tendered by National Grange pursuant to the terms of this Agreement.

8. To the extent that the scope of the Original Contract and/or the Completion Contract may be increased between the Obligee and the Completion Contractor at any point in time, any costs involving such modifications or increases in the scope of work shall be the sole responsibility of the Obligee and National Grange shall have no liability therefore except insofar as any such changes shall be included in paragraph 10 of this Agreement.